UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF BERGELECTRIC CORP., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAUER, INC., et al.,<br><br>Defendants. | Case No. 5:18-cv-00612-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 59 |

## **I. INTRODUCTION**

This lawsuit arises out of the construction of the Operational Readiness Training Complex at Fort Hunter Liggett Army Base located in Monterey County, California ("Project"). The United States Army Corps of Engineers awarded a contract to Sauer, Inc. ("Sauer") to design and build the Project. Sauer entered into a subcontract with Bergelectric Corp. ("Berg"). Berg alleges that Sauer mismanaged the Project and breached the subcontract, causing Berg damages exceeding $1,863,976. Sauer and codefendant Federal Insurance Company ("Federal") move for summary judgment asserting, among other things, that Berg signed a release that unequivocally waived and released the claims asserted in this action. Based upon all pleadings filed to date and the comments of counsel at the hearing held on April 18, 2019, the court will grant in part and deny in part Sauer and Federal's motion for summary judgment.

## II. BACKGROUND

In February of 2014, the United States Amery Corps of Engineers awarded a contract to Sauer to design and build the Project. In June of 2014, Sauer entered into a written subcontract ("Subcontract") with Berg whereby Berg agreed to provide the electrical contracting, labor, services, equipment and/or materials for the Project's electrical scope. The Subcontract included the following provision:

> 5.3.3. CLAIMS RELATING TO CONTRACTOR. Should the Subcontract Work be delayed[,] disrupted or interfered with solely as a result of acts or omissions of Contractor or anyone employed by Contractor on the Project, then, at Contractor's sole discretion, Contractor shall provide Subcontractor either:
>
> a) an extension of time for completion of the Subcontract Work equal to the actual impact of the delay, disruption, or interference on the critical path of the Subcontractor's Work; or
>
> b) additional compensation but only if a written claim for delay is submitted to Contractor within seven (7) days from the time Subcontractor should have reasonably first become aware of the commencement of such delay, disruption, or interference.

Dkt. No. 1-3, at 9-10.

Over the course of the construction of the Project, Berg submitted the four change orders that are the subject of Berg's claims for delay damages. On May 2, 2016, Berg submitted two change order requests: Change Order Request 20, requesting $140,521.00; and Change Order Request 21, requesting an additional $951,243.00. C. Haag Decl. ¶¶ 5, 6; *see also* Exs. A and B to Haag Decl. (Dkt. No. 59-2). On June 20, 2016, Berg submitted Change Order Request 22, requesting another $239,764.00. C. Haag Decl. ¶ 7; *see also* Ex. C to Haag Decl. Finally, on October 31, 2016, Berg submitted Change Order Request 30 for an additional $396,699.00. C. Haag Decl. ¶ 8; *see also* Ex. D to Haag Decl. Change Order Requests 20, 21, 22 and 30 totaled $1,728,227.00. Berg also submitted "requests for equitable adjustment" based upon the four Change Orders. C. Haag Decl.¶ 10; *see also* Ex. E to Haag Decl.

Later that year, on December 20, 2016, Berg submitted Invoice Number 14758-29 for $45,993.42 to Sauer for "Progress billing for electrical work performed at [P]roject location for period ending 12/31/2016" ("Request for Payment No. 29"). Ex. 6 to Casazza Decl. On January 23, 2017, Berg submitted Invoice No 14758-30 for $46,788.36 to Sauer for "Progress billing for electrical work performed at [P]roject location for period ending 1/31/2017" ("Request for Payment No. 30"). Ex. 7 to Casazza Decl.

On March 3, 2017, Berg executed a "Schedule G Partial Waiver and Lien Release" in exchange for a payment of $45,993.42, the amount of Request for Payment No. 29. This waiver and release stated as follows:

> For and in consideration of the payment . . . and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the undersigned hereby waive, release and relinquish any and all rights, claims, demands, liens, claims for relief, causes of action and the like, whether arising at law, under a contract, in tort, in equity, or otherwise, which the undersigned has now or may have had arising out of the performance of work or the furnishing of labor or materials by the undersigned through 12/31/2016, the effective date of this Waiver and Release . . .
>
> This Waiver and Release applies to all facts, acts, events, circumstances, changes, constructive or actual delays, acceleration, extra work, disruptions, interferences and the like which have occurred, or may be claimed to have occurred, prior to the effective date hereof, excepting only any claims currently unresolved for which written notice has been provided to Sauer as follows:
>
> NONE
>
> . . .
>
> This Waiver and Release is intended to apply to and protect Sauer Incorporated's payment and performance bond surety, if any, as well as anyone claiming by or through Sauer Incorporated, the Owner, or the surety in connection with any claim, demand, lien, claim for relief, cause of action and the like waived, release[d] and relinquished by the terms of this Waiver and Release.

Ex. F to Haag Decl. The March 3, 2017 release extended to Berg's claims against Sauer as of December 31, 2016. *Id.* On May 12, 2017, Berg executed another "Schedule G Partial Waiver and Lien Release" in exchange for a payment of $46,788.36, the amount of Request for Payment

No. 30. C. Haag Decl. ¶ 13; *see also* Ex. G to Decl. The May 12, 2017, waiver and release extended to Berg's claims against Sauer as of January 31, 2017. *Id*.

Berg initiated this action in January of 2018, asserting four causes of action against Sauer: (1) breach of contract; (2) open book account; (3) account stated; and (4) quantum meruit. Berg's fifth cause of action for compensation on the Miller Act Payment Bond is asserted against both Sauer and Federal.

Sauer and Federal now move for summary judgment, contending that: (1) Berg signed a release indicating that it unequivocally waived and released the claims it is asserting in this action; (2) Berg's delay claims against Sauer (delay portions of Counts 1-4) are barred by the "No Damages for Delay" clause in the parties' subcontract; (3) Berg's account stated claim fails because the parties did not agree to any amount of indebtedness; and (4) Berg's quantum meruit claim fails because it is undisputed that the parties' contract governs the subject matter for which Berg seeks equitable recovery.

### III. STANDARDS

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the issue is one on which the nonmoving party must bear the burden of proof at trial, the moving party need only point out an absence of evidence supporting the claim; it does not need to disprove its opponent's claim. *Id*. at 325.

If the moving party meets the initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 324. A "genuine issue"

for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. *Id*. ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c).

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Id*.

## IV. DISCUSSION

A. The Schedule G Partial Waiver and Lien Releases

Pursuant to the express terms of the Schedule G Partial Waiver and Lien Releases executed on March 3, 2017 and May 12, 2017 (the "Releases"), Berg waived, released and relinquished "any and all rights, claims demands, liens, claims for relief, causes of action and the like, whether arising at law, under a contract, in tort, in equity, or otherwise, which [Berg] has now or may have had arising out of the performance of work or the furnishing of labor or materials by [Berg] through [January 31, 2017]. Exs. F & G to Haag Decl. The Releases also recited that the waiver and release applied, without any exceptions, "to all facts, acts, events, circumstances, changes, constructive or actual delays, acceleration, extra work, disruptions, interferences and the like

which have occurred, or may be claimed to have occurred, prior to the effective date hereof." *Id*. Berg's claims in this action, which were known to Berg at the time it executed the Releases, are encompassed within the broad Releases. Therefore, Berg's claims would be barred by the Releases unless the Releases are invalid or unenforceable as Berg contends. Berg's invalidity or unenforceability arguments are addressed separately in the sections below.

B.  California's Mechanics Lien Law

Berg contends that the Releases are invalid and unenforceable because they are not in any of the statutorily mandated formats specified by California Civil Code sections 8120-8138, California's Mechanics Lien Law.[1] In response, Sauer and Federal argue that California's Mechanics Lien Law requires parties to use the statutorily mandated formats only when the parties are waiving and releasing California Mechanics Lien Law remedies, namely the mechanics lien, the stop notice, the payment bond, and the prompt payment penalties, and not when waiving other types of remedies such as those Berg seeks in the instant lawsuit.

Sauer and Federal's argument is supported by a plain reading of the statute. Section 8004 defines "claimant" to mean "a person that has a right under this part to record a claim of lien, give a stop payment notice, or assert a claim against a payment bond, or do any combination of the foregoing." Cal. Civ. Code § 8004. Section 8124 provides that:

> A claimant's waiver and release does not release the owner, construction lender, or surety on a payment bond from a lien or claim unless both of the following conditions are satisfied:
>
> (a) The waiver and release is in substantially the form provided in this article and is signed by the claimant.
>
> (b) If the release is a conditional release, there is evidence of payment to the claimant. Evidence of payment may be either of the following:
>
> (1) The claimant's endorsement on a single or joint payee check that has been paid by the financial institution on which it was drawn.

---

[1] State law controls the interpretation of Miller Act subcontracts to which the United States is not a party. *U.S. for Use and Benefit of Reed v. Callahan*, 884 F.2d 1180, 1185 (9th Cir. 1989). All statutory citations are to the California Civil Code unless indicated otherwise.

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

6

(2) Written acknowledgment of payment by the claimant.

Cal. Civ. Code §8124. Read together, sections 8004 and 8124 provide that a person's waiver and release does not release "claims" for a lien, a stop payment notice, or a claim against a payment bond, or any combination thereof, unless the conditions stated in section 8124 are satisfied. Berg does not assert any of these claims. Furthermore, the California Mechanics Lien Law does not include any provisions governing waivers and releases of claims other than claims for a lien, stop payment notice, payment bond, or combination thereof. Therefore, the court rejects Berg's contention that California's Mechanics Lien Law renders the Releases invalid and unenforceable.

C. Subcontract Section 8.8

Berg next contends that section 8.8 of the Subcontract, entitled "Partial and Final Lien Waivers and Affidavits," limits the effect of the Releases to the amount requested in Requests for Payment Nos. 29 and 30. The court agrees with Berg. Section 8.8 provides in pertinent part:

> As a perquisite for interim payments, the Subcontractor shall provide, in a form attached as Schedule G, Partial Waiver and Lien Releases [sic] the amount of the application for payment and affidavits covering its subcontractors and suppliers for completed Subcontract Work. . . . In no event shall Design-Builder require the Subcontractor to provide an unconditional waiver of lien or claim, either partial or final, before receiving payment or in an amount more than what has been paid.

Dkt. No. 1-3, 14. The last sentence prohibited Sauer from requiring Berg to provide an "unconditional waiver of its claims . . . in an amount more than what has been paid." *Id*. Therefore, the Releases are limited to the amount Sauer paid Berg to satisfy Requests for Payment Nos. 29 and 30.

Sauer and Federal contend that limiting the Releases to the amount of payments would render the Releases meaningless. Citing *Tesco Controls, Inc. v. Monterey Mechanical Co.*, 124 Cal. App. 4th 780, 794 (2004), Sauer and Federal urge the court not to adopt such an interpretation because it would lead to an "absurdity" by "mak[ing] the [R]elease[s] nothing more than a glorified receipt." Defs.' Reply at 11 (Dkt. No. 64). In *Tesco*, the parties asserted conflicting

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

7

interpretations of a release of claims for a mechanic's lien, stop notice or bond right made under Civil Code section 3262(d)(1), a statute which has since been repealed. The release at issue recited in accordance with section 3262(d)(1) that: "*This claim shall be released by the undersigned to the following extent: This release covers a progress payment for labor, services, equipment or material furnished to Stratton Electric through 01/31/99 only.*" *Id*. at 791 (italics in original). The release, however, also recited in accordance with section 3262(d)(1) that the release did not affect the rights of the party releasing the claim to recover "*compensation for furnished labor, services, equipment or material covered by this release if that furnished labor, services, equipment, or material was not compensated by the progress payment.*" *Id*. Relying on the first recital, the defendant contended that the release waived all lien rights for work provided through January 31, 1999, and also barred plaintiff from recovering for the amount of work which was not compensated by the time plaintiff issued the release. *Id*. at 792. The plaintiff relied on the second recital, and argued among other things, that the release was valid only to the extent it received payment. The *Tesco* court found section 3262(d)(1) ambiguous, undertook an extensive analysis of the legislative history, and ultimately concluded that the release waived plaintiff's mechanic's lien rights, bond rights, and stop notice rights and that the release was not limited to the amount paid. *Id*. 797.

Unlike the waiver in *Tesco*, Section 8.8 of the Subcontract does not contain any ambiguity. Section 8.8 of the Subcontract clearly and unambiguously prohibited Sauer from requiring Berg to provide an unconditional waiver of claims "in an amount more than what has been paid." Dkt. No. 1-3, 14. Therefore, pursuant to Section 8.8 of the Subcontract, the Releases are limited to the amount Sauer paid Berg to satisfy Requests for Payment Nos. 29 and 30.[2]

---

[2] Sauer and Federal contend that the Releases are effective to waive and release the Miller Act claim because the Releases comply with the requirements of 40 U.S.C. §3133(c). Even if the Releases comply with section 3133(c), however, Section 8.8 of the Subcontract limits the effect of the Releases for the reasons stated above.

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT
8

D. Section 5.3.3: The "No Damages for Delay" Clause

Sauer and Federal rely on the "No Damages for Delay" Clause set forth in Section 5.3.3 of the Subcontract as a separate and independent basis for summary judgment. Berg raises several arguments in response. First, Berg contends that the "No Damages for Delay" Clause acts as a "forfeiture clause," and that in general, forfeiture clauses are disfavored in California and must be strictly construed against Sauer to avoid forfeiture of Berg's rights.

Section 5.3.3 provides as follows:

> 5.3.3. CLAIMS RELATING TO CONTRACTOR. Should the Subcontract Work be delayed[,] disrupted or interfered with solely as a result off acts or omissions of [Contractor] or anyone employed by [Contractor] on the Project, then, at [Contractor's] sole discretion, [Contractor] shall provide Subcontractor either:
>
> a) an extension of time for completion of the Subcontract Work equal to the actual impact of the delay, disruption, or interference on the critical path of the Subcontractor's Work; or
>
> b) additional compensation but only if a written claim for delay is submitted to Contractor within seven (7) days from the time Subcontractor should have reasonably first become aware of the commencement of such delay, disruption, or interference.

Dkt. No. 1-3, at 9-10. No damages for delay clauses are enforceable under California law. *Hansen v. Covell*, 24 P.2d 772, (1933) (concluding lower court "erred in awarding damages to [the general contractor] caused by the owner's delay"); *see also Harper/Nielsen-Dillingham, Builders, Inc. v. U.S.*, 81 Fed. Cl. 667, 678 (2008) ("outside of the context of contracts with state and local agencies under Cal. Pub. Cont. Code § 7102, California law does not provide exceptions to the enforceability of clear and explicit 'no damage for delay' clauses in contracts between private parties, including, as here, in subcontracts under contracts involving the United States."). Therefore, Berg's general arguments regarding forfeiture clauses are unpersuasive.

Second, Berg contends that the "No Damages for Delay" Clause does not bar its Miller Act claim because it does not satisfy the requirements of Title 40 United States Code section 3133(c)(3) for a valid waiver. Section 3133(c)(3) provides that a waiver of the right to bring a

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

9

civil action on a Miller Act payment bond is void unless the waiver is in writing; signed by the person whose right is waived; and executed *after* the person whose right is waived has furnished labor or material for use in the performance of the contract. 40 U.S.C. §3133(c)(3). Further, a waiver of Miller Act rights must be "clear and explicit." *U.S. for Use and Benefit of Walton Technology, Inc. v. Weststar Engineering, Inc.*, 290 F.3d 1199, 1208 (9th Cir. 2002).

Here, the "No Damages for Delay" Clause set forth in Section 5.3.3 of the Subcontract was executed in June of 2014, well *before* Berg furnished labor and materials reflected in the four Change Orders that are the subject of Berg's claim for payment on the Miller Act Payment Bond. Therefore, the "No Damages for Delay" Clause is ineffective as to Berg's Miller Act claim. 40 U.S.C. § 3133(c)(3).

Third, Berg contends that the "No Damages for Delay" Clause is unenforceable as to its remaining claims because the delays in this case were unreasonable and beyond the contemplation of the parties. Berg's primary authority in support of its argument is *Hawley v. Orange County Flood Control Dist.*, 211 Cal. App. 2d 708 (1963). In *Hawley*, the parties to a contract for construction of a channel had executed a no damages for delay provision that stated in pertinent part, "if the contractor suffers any delay . . . the contractor shall be entitled to an extension of time equivalent to the time lost for any of the above-mentioned reasons, but shall not be entitled to any damages for such delay." *Id*. at 712. The trial court granted defendants' motion for non-suit, finding that plaintiff was precluded from recovering damages because of the no damages for delay provision, even though plaintiff had presented evidence that defendants breached their contract by unreasonable delay in furnishing revised plans and written authorization to proceed with work. *Id*. at 712. On appeal, the appellate court rejected defendants' argument that the no damages for delay provision was "unequivocal" and held that it was error to grant the motion for non-suit because plaintiff had raised a triable issue of fact as to whether the parties intended the no damages for delay provision to preclude reimbursement for extra expense caused by the revised plans and unreasonable delay. *Id*. at 714.

Like the plaintiff in *Hawley*, Berg has raised a triable issue as to whether the parties intended for the "No Damages for Delay" Clause to preclude Berg from seeking reimbursement for extra expenses that were allegedly incurred as a result of unreasonable delays. At the time the parties entered the Subcontract, the Project was to be completed in 584 days and by February 11, 2016. Mashburn Decl., ¶ 7 (Dkt. No. 62-2). The Project, however, was not completed until March 17, 2017. *Id*. Thus, the Project was completed 400 days past the scheduled completion date. Berg's chief executive officer believed that the "No Damages for Delay" Clause would "possibly be applicable in an instance where the Project was delayed by 7 to 14 days, not delays in excess of that, and certainly not delays in excess of 300 days." *Id*. ¶ 6. Sauer is not entitled to summary judgment as to any of the claims based upon the applicability of the "No Damages for Delay" Clause.

E. Claim for Account Stated

Sauer and Federal seek summary judgment as to the claim for account stated, asserting that the parties have not agreed to any amount of indebtedness. "To constitute an account stated, it must appear that at the time of the statement an indebtedness from one party to the other existed, that a balance was then struck and agreed to be the correct sum owing from the debtor to the creditor, and that the debtor expressly or impliedly promised to pay to the creditor the amount thus determined to be owing." *H. Russell Taylor's Fire Prevention Service, Inc. v. Coca Cola Bottling Corp.*, 99 Cal. App. 3d 711, 726, 160 Cal. Rptr. 411(Cal. 5th Ct. App. 1979).

Here, the undisputed facts show that Sauer "never agreed that Berg is entitled to any of the sum that it seeks in this action." C. Haag Decl. ¶ 14. Moreover, there is no evidence Sauer agreed to pay specifically for the four Change Orders at issue and Berg's arguments to the contrary are unpersuasive. Berg contends that Sauer's prior conduct—paying for one change order in the amount of $34,548—led Berg to reasonably believe that it would be compensated for the four Change Orders at issue. That Berg paid for one change order does not support a reasonable inference that Sauer impliedly agreed to pay for additional orders, much less the four Change

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

11

Orders at issue.

Berg also contends that Sauer gave verbal assurances that "the extra compensation would be satisfactorily resolved." Casazza Decl. ¶ 22. More specifically, Berg's Vice President, Peter Casazza, states in his declaration that: Sauer's representative Mr. Jones said he "wanted to meet . . . . to further discuss and resolve Berg's pending and ongoing impact claims for delay and inefficiencies"; Sauer's "representatives" stated that Berg "would be paid via Sauer's prospective settlement with the responsible subcontractors"; Sauer's vice president requested that Berg provide additional back-up for Berg's claims; Berg prepared and submitted the requested information; and "Berg disputes that Sauer unequivocally denied Berg was entitled to any of the amounts it seeks in this action;" Casazza Decl. ¶ 22 (Dkt. No. 62-5). This evidence is insufficient to raise a triable issue because it cannot reasonably support an inference that Sauer agreed to a "correct sum owing from the debtor to the creditor." *H. Russell Taylor's Fire Prevention Service*, 160 Cal. Rptr. at 421. In the absence of evidence of any agreement between Sauer and Berg as to the final balance owed to Berg, Sauer is entitled to summary judgment on the claim for account stated.

F. Quantum Meruit Claim

Sauer and Federal contend that the quantum meruit claim is improper because the Subcontract governs the subject matter of Berg's quantum meruit claim. "Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Entm't. Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992) (citation omitted). To succeed on a claim based on quantum meruit, a plaintiff must demonstrate (1) that the plaintiff performed certain services for the defendant, (2) the reasonable value of the services rendered, (3) that the services were rendered at defendant's request, and (4) that the plaintiff was unpaid. *DPR Constr. v. Shire Regenerative Med., Inc.*, 204 F. Supp. 3d 1118, 1131 (S.D. Cal. 2016) (citing *Cedars Sinai Med. Ctr. v. Med-*

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT
12

*West Nat'l Life Ins. Co.*, 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000)). "When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." *Id*. (quoting *Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal. App. 4th 1410, 1420, 49 Cal. Rptr. 2d 191(Cal. 2d Ct. App. 1996)). The few exceptions to this rule amount to instances where the contract was "procured by fraud or is unenforceable or ineffective for some reason." *Id*. (quoting *McBride v. Boughton*, 123 Cal. App. 4th 379, 388, 20 Cal. Rptr. 3d 115 (Cal. 1st Dist. Ct. App. 2004)).

Berg does not dispute that the parties entered into a Subcontract. Berg contends, however, that it is permitted to plead claims in the alternative so that if the court finds that the Subcontract was abandoned it may seek equitable relief. Berg's Mem. of P. & A. in Support of Opp.'n to Defendants Sauer, Inc. and Federal Insurance Company's Motion for Summary Judgment, 19 (Dkt. No. 62). Berg has never pled abandonment of the Subcontract as a basis for its claim for quantum meruit and is precluded from doing so at this late stage in the litigation. *See Wasco Prods. Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991-92 (9th Cir. 2006) (plaintiffs seeking to toll the statute of limitations on various grounds must have included the tolling allegation in their pleadings).

Lastly, Berg contends that if the court finds that the remedies it seeks "are not covered under a breach of contract," then Berg is entitled to pursue a claim for quantum meruit. Berg's argument is unpersuasive. The Subcontract sets for the terms governing construction of the Project, including terms governing damages for delay. Accordingly, Berg is foreclosed from pursuing a claim for quantum meruit. *DPR Constr. v. Shire Regenerative Med., Inc.*, 204 F. Supp. 3d at 1131.

## V. CONCLUSION

For the reasons set forth above, Sauer and Federal's motion for summary judgment is GRANTED as to Berg's claims for account stated and quantum meruit, and DENIED in all other

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

13

respects.

**IT IS SO ORDERED.**

Dated: April 18, 2019

EDWARD J. DAVILA
United States District Judge