UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF BERGELECTRIC CORP., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAUER, INC., et al.,<br><br>Defendants. | Case No. 5:18-cv-00612-EJD<br><br>**ORDER DENYING MOTION TO EXCLUDE EXPERT TESTIMONY OF MARK ZOLLMAN**<br><br>Re: Dkt. No. 111 |

Pursuant to Federal Rule of Evidence 702, Sauer moves to exclude the testimony of Mike Zollman ("Zollman") related to (1) calculation of lost productivity damages for rough-in work based on a measured mile analysis; (2) calculation of lost productivity for finish work based on a "loss percentage" derived from the rough-in analysis; and (3) calculation of a daily rate for jobsite overhead costs related to alleged delay. Dkt. No. 111. Sauer also contends that Zollman's causation opinions related to interpretation of meeting minutes and letters should be excluded because they usurp the role of the trier of fact and require no specialized knowledge to assist the same. For the reasons stated below, Sauer's motion will be denied.

I.  **STANDARDS**

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the witness's scientific, technical, or other specialized knowledge will

Case No.: 5:18-cv-00612-EJD
ORDER DENYING MOTION TO EXCLUDE
1

help the trier of fact to understand the evidence or resolve a factual issue; (3) the testimony is based on "sufficient facts or data;" (4) "the testimony is the product of reliable principles and methods"; and (5) the witness reliably applies the relevant principles and methods to the facts of the case. Fed. R. Evid. 702 (2019). The trial court serves a gatekeeping function to prevent unreliable and irrelevant information from being presented at trial. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 584 (1993). In performing this function, the trial court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* at 590.

Where the matter will proceed by bench trial as in this instance, "the importance of the trial court's gatekeeper role is significantly diminished . . . because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. P'ship v. Comm'r of Internal Revenue*, 615 F.3d 321, 330 (5th Cir. 2010); *see also Fed. Trade Comm'n v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) ("When we consider the admissibility of expert testimony, we are mindful that there is less danger that a trial court will be unduly impressed by the expert's testimony or opinion in a bench trial." (quotation omitted)); *Volk v. United States*, 57 F. Supp. 2d 888, 896 n. 5 (N.D. Cal. 1999) ("[T]he Daubert gatekeeping obligation is less pressing in connection with a bench trial" where "the 'gatekeeper' and the trier of fact [are] one and the same.")

## II. DISCUSSION

Berg retained Zollman to opine about Berg's claimed damages. According to Zollman's report, (1) Sauer caused Berg to be less productive during all rough-in activities on each floor of each building; (2) Berg is entitled to damages resulting from alleged loss of productivity for its rough-in labor amounting to $1,123,809.37 before overhead and profit; (3) Berg is entitled to damages resulting from alleged loss of productivity for its finish labor amounting to $314,528.36 before overhead and profit; and (4) Berg is entitled to jobsite time-related costs for delay amounting to $497,402.36 before overhead and profit. G. Martin Decl. ¶¶ 3, 6-7,10; M. Zollman Expert Report on Damages (the "Report"), 10-20, 23-24.

Case No.: 5:18-cv-00612-EJD
ORDER DENYING MOTION TO EXCLUDE

2

### A. Zollman's Qualifications

Sauer stated at the hearing on January 29, 2020 that it does not challenge Zollman's qualifications as an expert.

### B. Lost Productivity Calculations For Rough-in Work

Zollman opines that Berg's loss of productivity damages for rough-in work is $1,123,809.37. Zollman arrives at this figure by performing a "measured mile" analysis, which is a recognized and accepted method of calculating loss of productivity. *See United States of Am. for the Use of Salinas Constr., Inc. v. W. Sur. Co.*, No. 14-1963 JLR, 2016 WL 3632487, at *3 (W.D. Wash. July 7, 2016); *see also Safeco Ins. Co. of Am. v. Cty. of San Bernardino*, 347 Fed. Appx. 315, 318 (9th Cir. 2009). "The measured mile method is a technique whereby an unimpacted period or area or activity of construction work is compared with another period or area or activity of construction work that has been disrupted, the assumption being that the difference between the labor or equipment hours expended per unit of work performed in the unimpacted and impacted periods represents the loss to the contractor due to the impact or disruption for which another party is responsible." *Salinas Constr.*, 2016 WL 3632487, at *3 (quoting Lee Davis et al., *Does the "Measured Mile" Measure Up? When It Has, When It Hasn't, and What May Happen Under Daubert/Kumho*, Construction Briefings No. 2007-4 (April 2007)) (emphasis added).

Sauer contends that Zollman's measured mile analysis should be rejected for several reasons. Sauer contends that the documents Zollman relies upon are materially flawed in that: "(1) the unimpacted period contains rough-in labor hours for underslab work not performed in the impacted period; (2) Berg's cost codes are limited, which resulted in dissimilar work being billed under the same code; (3) when Berg's rough-in labor hours are compared against the daily reports, significant and consistent errors are present resulting in various activities being billed under an incorrect code; and (4) Zollman's analysis lumps all rough-in work on multiple floors of multiple buildings across the project into one location for purposes of his attempted measured mile." Mot. at 7. Zollman disagrees with these arguments with reasoned counterpoints. Zollman Decl. ¶¶ 24-42 (Dkt. No. 114-1). In any event, the alleged flaws bear on the weight of Zollman's testimony,

Case No.: 5:18-cv-00612-EJD
ORDER DENYING MOTION TO EXCLUDE
3

not its admissibility. "[D]istrict courts within and outside this district have often concluded that experts' decisions about what data to use in their analysis bear on the weight, not the admissibility, of expert testimony." *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 305 (N.D. Cal. 2018) (collecting cases). And an expert may rely on data that others collected. *See Safeco Ins. Co. Of Am. v. Cty. Of San Bernardino*, 347 F.App'x 315, 317 (9th Cir. 2009) (upholding award of lost productivity damages based on expert testimony using measured mile approach). The alleged flaws in Zollman's measured mile analysis for rough-in work may be tested during trial "through competing evidence and incisive cross-examination." *Id.* (quoting *Murray v. S. Route Mar. SA*, 870 F.3d 915, 925 (9th Cir. 2017)).

### C. Lost Productivity Calculations For Finish Work

Zollman opines that Berg is entitled to damages resulting from alleged loss of productivity for its finish labor amounting to $314,528.36. Zollman arrives at this figure as follows. Zollman first derives a loss percentage from the measured mile analysis he conducted for rough-in work by taking the loss of productivity hours (16,401) and dividing that number by the total rough-in hours (32,836.25), which equals 49.9%. Next, Zollman applies that loss of productivity percentage to the total number of hours expended on finish work (9,190.25)), and arrives at 4,590 hours. Zollman then multiplies 4,590 by an hourly labor cost of $68.52 to arrive at $314,528.36.

Sauer contends that Zollman's opinions regarding loss of productivity for finish work should be rejected because his methodology is unsound: he does not apply a measured mile analysis; he does not provide any basis to extrapolate the results of his analysis on rough-in work to finish work; he assumes without any factual basis that both types of work were performed under the same conditions; and he does not show that finish work was actually impacted. Moreover, Sauer contends that Berg's own cost accounting system shows that Berg actually saved $54,113.67 on finish labor. Mot. at 10.

Berg provides a persuasive rebuttal. Berg explains that a measured mile analysis could not be performed because such an analysis requires a comparison of an unimpacted period of construction work to an impacted period of construction work, and in this case, the entire period of

Case No.: 5:18-cv-00612-EJD
ORDER DENYING MOTION TO EXCLUDE
4

finish work was impacted. Berg also asserts that the finish work was, in fact, performed under similar conditions as the impacted rough-in work. More specifically, Berg asserts that both were impacted by "trade stacking, out-of-sequence work, compression, multiple passes, go-backs, re-works, concurrent rather than sequential work, interference from material staging, etc." Opp'n at 22 (Dkt. No. 114). Although Zollman's analysis is not as precise as a measured mile, it has a reasonably sound basis and methodology and will not be excluded from trial. At trial, Sauer will have ample opportunity to test Zollman's analysis on cross-examination.

### D. Delay Damages

According to Zollman's calculations, Berg's delay damages are $497,402.36. His calculation is based on an average of jobsite overhead costs, which consist of cleanup and general labor, equipment rentals, office supplies, material handling, per diem, supervision, temporary power maintenance, travel, and vehicles.

Sauer contends that the delay damages figure is artificially high because some of the overhead costs were not necessarily affected by the alleged delays. For example, Sauer contends that Berg's Project Summary sheet shows that Berg was only over budget for per diems by $49,909.00, whereas Zollman claims Berg is entitled to $111,364.00 for per diem costs.

Berg responds that Zollman's methodology for calculating a daily rate for damages is common in the construction industry and cannot legitimately be excluded. The Court agrees. Whether or not certain items of costs should be included in the analysis goes to the weight rather than the admissibility of Zollman's delay damages calculations.

### E. Opinions Re Causation

Zollman opines that Sauer caused Berg to lose labor productivity, and in doing so, he quotes extensively from Project correspondence. Report 11-14. Sauer contends that Zollman should be precluded from testifying on these subjects so as not to usurp the role of the trier of fact.

The Court concludes that the portions of Zollman's report to which Sauer objects will not usurp the factfinder's role. Zollman is not offering expert opinion about the Project correspondence. Instead, he reasonably relies on the correspondence to provide background

information and to demonstrate the bases for his opinions. The Project correspondence indicate that Sauer made changes to the Project schedule, that there were time constraints, and Sauer acknowledged there was a "stacking effect on various work activities." Report 13-14. Furthermore, because the Project correspondence contain party admissions under Rule 801 of the Federal Rules of Evidence, Zollman may reasonably rely upon the correspondence to support his causation analysis.

### III. ORDER

Sauer's motion to exclude the expert testimony of Mike Zollman is DENIED.

**IT IS SO ORDERED.**

Dated: January 29, 2020

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-00612-EJD
ORDER DENYING MOTION TO EXCLUDE
6